UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT C. HUMES,

       Plaintiff,

                                      Case No. 13-10385

     v.                              Hon. Terrence G. Berg

ELECTRICAL WORKERS' PENSION
TRUST FUND OF LOCAL UNION #58,
I.B.E.W., DETROIT, MICHIGAN,

       Defendant.

_____/

ORDER GRANTING-IN-PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT,
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING CASE TO BOARD OF TRUSTEES

Plaintiff Robert C. Humes is appealing a May 25, 2011 decision of the Board

of Trustees of the Defendant Pension Fund which denied him pension credit for

certain hours that he claimed to have worked for French Electric in 1985.  On

November 12, 2013, Plaintiff filed a motion for summary judgment (Dkt. 24), asking

the court to set aside the Board's decision, arguing that it was an arbitrary and

capricious abuse of the plans' discretion, and partially the result of a conflict of

interest.  That same day, Defendant filed its own motion (Dkt. 25), asking that the

Board's decision be affirmed.  On February 19, 2014, the Court heard oral argument

on the cross motions for summary judgment.

For the reasons set forth below, Plaintiff's Motion is GRANTED IN PART, Defendant's Motion is DENIED, and the case is remanded to the Board of Trustees for further proceedings, as contemplated by this Order.

## I.    FACTS

Local Union 58 I.B.E.W. ("Local Union 58") is a labor organization that represents electricians in the Metro Detroit area (Dkt. 1, Compl. ¶ 2).  In 1959, Local Union 58 created a pension trust fund for its electrical workers (Dkt. 16, Ex. A, p. 3).  A board of six trustees ("the Board of Trustees") administers the fund (*Id.*), and a defined benefit pension plan ("the Plan") governs it (Dkt. 16, Ex. B, p. 1). Under the terms of the Plan, an employee is entitled to an accrued benefit at the time the employee retires (*Id.*, p. 4).  The amount of the benefit depends on the number of hours the employee works (*Id.*, p. 7), and the benefit rate in effect on the date that an employee becomes inactive (*Id.*, p. 8).  The Plan provides that an employee becomes inactive when the employee has not completed 300 hours of work per year for two consecutive years (*Id.*, pp. 6, 10).  However, the Plan further provides that if an employee completes 300 hours of work in the year immediately following the date on which he or she became inactive, then the employee's temporary break in service will be "bridged," and the benefit rate will be calculated as if the employee had not become inactive at that time (*Id.*, p. 10).

The date on which an employee becomes inactive is significant because the monthly benefit rate has increased nearly annually (*Id.*, p. 7).  For example, the monthly benefit rate effective in 1976 was $1.15 for every 100 hours of work, while

the monthly benefit rate effective in 2009 was $5.10 for every 100 hours of work (*Id.*). Thus, an employee who became inactive in 1976 would receive benefits at a lower rate than an employee who became inactive in 2009.[1] This case involves a dispute about whether Plaintiff "bridged" a temporary break in service, and consequently whether a portion of his benefits should be calculated at the rate in effect in 1984 or the rate in effect in 2010.

Plaintiff began working as an electrician out of Local Union 58 in 1970 (Dkt. 1, Compl. ¶ 7). Thirteen years later, Plaintiff struggled to find sufficient work in the industry (*Id.* ¶ 8), and, as a result, Plaintiff did not accumulate 300 hours of work in 1983 or 1984. For that reason, Plaintiff became inactive on October 1, 1984. (*Id.*). In 1985, however, Plaintiff was referred to French Electric (*Id.* ¶ 11). During that year, Plaintiff claims he worked for French Electric through Local Union 58 for over 700 hours (*Id.* ¶ 12). Thereafter, Plaintiff worked actively through Local Union 58 until his retirement in 2010 (*Id.* ¶ 14).

At the time of his retirement in 2010, Plaintiff applied for pension benefits under the terms of the Plan. Because Plaintiff believed his more than 300 hours of work in 1985 "bridged" his temporary break in service, he expected all of his benefits to be calculated at the rate in effect in 2010 (*Id.* ¶ 16). However, at that time Plaintiff became aware that Defendant's records indicated that he had worked only 129 hours in 1985 (*Id.* ¶ 15). And, according to Defendants, by working less

---

[1] To illustrate:  if a worker puts in 2000 hours per year, for 20 years, this results in a total of 40,000 hours of lifetime labor.  If that worker were to retire in 1976, when the benefit rate was $1.15 for every 100 hours of work, his or her pension benefit would be calculated by multiplying $1.15 by 400 (40,000 hours divided by 100), for a total monthly benefit of $460.  However, if the worker retired in 2009, when the benefit rate was $5.10 for every 100 hours of work, his or her monthly benefit would be much higher, i.e., $2,040 per month ($5.10 multiplied by 400).

than 300 hours in 1985 Plaintiff had not "bridged" his temporary break in service

(Dkt. 14, p. 9).  Defendant therefore calculated Plaintiff's benefits as if he had

become inactive in 1984, crediting his hours worked after 1985 at the rate of

$5.10/100 hours, while crediting his hours worked prior to 1983 at the lower rate of

$1.75/100 hours (Dkt. 24, Ex. D, p. 2).  In response, Plaintiff contacted Defendant in

an attempt to remedy what he viewed as a clerical error (Dkt. 24, Ex. E, p. 2-7).

As part of this effort, Plaintiff submitted various documents to Defendant

(*Id.*).  These documents included Social Security Administration records showing

that Plaintiff earned $14,252.78 from French Electric in 1985, an amount which

Plaintiff asserts represented approximately 700 hours of work (Dkt. 14, p. 7).

Plaintiff also submitted two emails from James French, the former owner of French

Electric, stating that Plaintiff had worked "strictly as a journeyman/foreman in the

field through Local 58, IBEW," that "French Electric was a union shop, [such that

Plaintiff's] wages and benefits were paid in accordance with that agreement," and

that "[a]ny accusations that indicate that I would allow a non-union employee to

work as an electrician in the field side-by-side with other union workers is

nonsense" (*Id.*, pp. 8, 21).  Despite this evidence, Plan Administrator Thomas

Mittelbrun affirmed the prior calculation of benefits (*Id.*, p. 9).

Plaintiff then formally appealed Mittelbrun's decision to the Board of

Trustees (*Id.*, p. 4).  Under the terms of the Plan, the Trustees are directed to

review benefit appeals *de novo*, without deference to the initial decision of the Plan

Administrator (Dkt. 24, Ex. K, p. 3).  The Plan Administrator's role in the appeal is

to be limited to gathering the documents that pertain to the case and forwarding them on to the Trustees (*Id.*).

Here though, Plaintiff alleges that Mittelbrun took a much more active role in his appeal (Dkt. 24, p. 13-16).  Plaintiff asserts that Mittelbrun emailed the Trustees prior to the hearing in an attempt to influence their decision (*Id.*).  Plaintiff also states that at the meeting when Plaintiff's appeal was to be considered, Mittelbrun provided an agenda for the Board of Trustees—in order to "save time" (*Id.*, p. 13)—which included a "summary of the issues at hand," selectively addressing the facts of Plaintiff's claim (Dkt. 14, p. 3).  At the hearing, the Trustees affirmed Mittelbrun's initial determination and denied Plaintiff's appeal (Dkt. 14, p. 22).

In response to the Trustees' denial of his appeal, Plaintiff filed suit under the Employee Retirement and Income Security Act ("ERISA"), which is now before the Court on the parties' cross motions for judgment.

## II.    STANDARD OF REVIEW

ERISA creates a right of action by a participant or beneficiary of a covered pension plan to recover benefits due under the plan.  29 U.S.C. § 1132(a)(1)(B).  The Supreme Court has held that generally, "a denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989).

Here though, the parties are in agreement that the Plan vests the administrator with discretionary authority to determine eligibility for benefits or otherwise construe the terms of the plan.[2]  As such, the Court will review the Trustees' decision under the deferential arbitrary and capricious standard.  *See Perry v. United Food & Comm'l Workers District*, 64 F.3d 238 242 (6th Cir. 1995); *Perez v. Aetna Life Insurance Co.*, 150 F.3d 550, 555 (6th Cir. 1998).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is "rational in light of the plan's provisions."  *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).  An administrator's decision will be upheld under this standard "when it is possible to offer a reasoned explanation, based on the evidence" for that particular outcome.  *Calvet v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir. 2005).  By extension, an administrator's decision "can be overturned only upon a showing of internal inconsistency, bad faith, or some similar ground."  *Magdziak v. Metro. Life Ins. Co.*, 920 F. Supp. 2d 782, 790 (E.D. Mich. 2013) (citations omitted).  However, "an administrator abuses its discretion when it engages in 'selective review of the administrative record' to justify a decision to deny coverage."  *Id.* (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)).

### III.   ANALYSIS

The Court's review of a denial of benefits under ERISA should be based solely on the administrative record.  *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998).  As such, if there is a need to consider additional evidence

---

[2] In 2007, Michigan banned the use of discretionary clauses in insurance policies.  *See* Mich. Admin. Code r. 500.2202(b).  However, this rule took effect June 1, 2007, and the Plan at issue in this case became effective July 28, 1982.  Therefore, the Plan predates the rule and is not subject to its terms.

outside the record, the Court must remand the question to the Plan's Trustees for a new determination in light of the additional evidence, rather than to consider that evidence in reviewing the merits of the Board's decision. *See Killian v. Healthsource Provident Administrators, Inc.,* 152 F.3d 514, 522 (6th Cir. 1998); *Yonts v. Continental Cas. Co.,* 113 F. App'x 669, 672 (6th Cir. 2004).

First, the Court notes that the Defendant is both the funder and the administrator of the Plan at issue. This dual role gives rise to an "actual, readily apparent conflict" of interest. *Killian,* 151 F.3d. at 521. The Trustees were clearly in a position to save the Plan money by denying Plaintiff's claim. Such a conflict of interest is a factor a reviewing court should consider when determining whether a plan administrator abused its discretion. *See generally Metro. Life Ins. v. Glenn,* 554 U.S. 105, 117 (2008).

The Trustees' already conflicted position was further complicated by the actions of the Plan Administrator, Thomas Mittelbrun. Prior to the hearing, the Administrator (1) affirmatively presented his case to the Trustees (Dkt. 24, Ex. L) and (2) selectively summarized the evidence to "save time" (Dkt. 24, Ex. M). It is also unclear whether the Administrator considered *all* the available evidence during his investigation. Defendant's letter initially denying Plaintiff's claim stated that its decision was based on a review of Defendant's own historical records (Dkt. 14, p. 9). Thereafter, the Administrator proceeded from an unwavering assumption that the Plan's contribution records were correct, interpreting all evidence as being consistent with those records and discounting any alternative explanations for what

7

Plaintiff perceived to be a discrepancy in the Plan's records, without providing any real explanation for why Plaintiff's conflicting evidence was being rejected. (Dkt. 14, pp. 19-21).

"The arbitrary and capricious standard is not a 'rubber stamp [of] the administrator's decision.'" *McCandless v. Standard Ins. Co.*, 509 F. App'x 443, 448 (6th Cir. 2012) (citing *Kovach v. Zurich Am. Ins. Co.,* 587 F.3d 323, 328 (6th Cir. 2009)). And the Sixth Circuit has held that a decision based upon a selective consideration of evidence constitutes an abuse of a plan administrator's discretion. *Magdziak*, 920 F. Supp. 2d at 790 (finding a plan administrator's decision to deny benefits was arbitrary and capricious because it selectively credited supporting evidence while rejecting contrary evidence without a sufficient explanation).

In the circumstances of this case, the Court does give some weight to Defendant's conflict of interest, and finds that it cannot be discounted as a factor affecting the denial decision. This factor alone is not determinative, however. The Court also considers the actions of the Plan Administrator in presenting the case and summarizing some of the evidence to the Board, while failing to account for Plaintiff's contrary evidence. These actions were not consistent with a disinterested, objective, and impartial administration of the claim. Indeed, the granting of discretionary authority does not change the fact that "a plan administrator owes a special duty of loyalty to the plan beneficiaries." *Metro. Life Ins. v. Glenn*, 554 U.S. at 111. ERISA requires that a plan participant be afforded "a reasonable opportunity…for a full and fair review" of any claim denial. 29 U.S.C.

§ 1133(2). Even applying the more deferential arbitrary and capricious standard of review, the Court concludes that the Defendant abused its discretion in denying Plaintiff's appeal.

## IV. CONCLUSION

Therefore, for the reasons stated above, Plaintiff's Motion is **GRANTED IN PART**, Defendant's Motion is **DENIED**, and the case is remanded to the Board of Trustees to consider all of the available evidence and provide a full and fair review of Plaintiff's claim.

**SO ORDERED**.

Dated: July 16, 2014                           s/Terrence G. Berg
                                               TERRENCE G. BERG
                                               UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was electronically submitted on July 16, 2014, using the CM/ECF system, which will send notification to the parties.

                                               s/A. Chubb
                                               Case Manager

9